# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LIONEL D. BATTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2018-0376-KSJM |
| | ) | |
| UCAR INTERNATIONAL INC., | ) | |
| UCAR CARBON COMPANY INC., | ) | |
| GRAFTECH INTERNATIONAL | ) | |
| LTD., GRAFTECH | ) | |
| INTERNATIONAL HOLDINGS INC., | ) | |
| BCP IV GRAFTECH HOLDINGS LP, | ) | |
| and ATHENA ACQUISITION | ) | |
| SUBSIDIARY INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted: January 10, 2019
Date Decided: April 3, 2019

Charles A. McCauley III, OFFIT KURMAN, P.A., Wilmington, Delaware; *Counsel for Plaintiff Lionel D. Batty*.

Bradley R. Aronstam, Eric D. Selden, ROSS ARONSTAM & MORITZ LLP, Wilmington, Delaware; *Counsel for Defendants UCAR International Inc., UCAR Carbon Company Inc., GrafTech International Ltd., GrafTech International Holdings Inc., BCP IV GrafTech Holdings LP, and Athena Acquisition Subsidiary Inc.*

**McCORMICK, V.C.**

Plaintiff Lionel D. Batty was employed by certain of the entity defendants for over thirty-four years. They compensated Batty over that time in various combinations of cash and equity. On July 13, 2000, Batty signed a severance compensation agreement (the "Agreement"). The Agreement sets the compensation that Batty would receive from the defendants in the event he resigned for "good reason" following a "change in control." A change of control occurred in 2015, and Batty resigned in early 2017. The defendants accepted Batty's resignation no-contest and paid him over $1 million in compensation. Batty then filed this suit on May 29, 2018, seeking the over $1.5 million that the defendants allegedly shortchanged him under the Agreement. The defendants have moved to dismiss the complaint.

The parties do not dispute that the change of control occurred or that Batty's resignation triggered his entitlement to compensation under the Agreement. The parties dispute whether the plain language of the Agreement entitles Batty to compensation for his equity awards. This decision finds that the parties' competing interpretations of the Agreement are both reasonable. That finding renders the Agreement ambiguous. At the pleadings stage, the Court may not choose between reasonable interpretations of an ambiguous contract. As to Batty's claim for breach of the Agreement, therefore, the defendants' motion is denied.

Not all of Batty's claims survive. The complaint lumps Batty's core contractual grievance with four alternative counts for compensation and two counts for attorneys' fees. Plus, two of the entities listed as a "defendants" do not belong on the caption: one no longer exists and another is redundant. Cutting the clutter, the Court grants the motion to dismiss as to those six counts and two "defendants."

## I. FACTUAL BACKGROUND

The facts are drawn from the Verified Complaint[1] and documents incorporated by reference therein.

The defendants ("Defendants") are GrafTech International Ltd. ("GrafTech") and its predecessors and successors in interest: UCAR International Inc. ("UCAR International"); UCAR Carbon Company Inc. ("UCAR Carbon"); GrafTech International Holdings Inc.; BCP IV GrafTech Holdings LP ("BCP IV"); and Athena Acquisition Subsidiary Inc. ("Athena").

Batty worked for Defendants for over 34 years. UCAR International entered into the Agreement with Batty on July 13, 2000. The Agreement was later assigned to GrafTech.

In 2005, GrafTech adopted an Equity Incentive Plan. Batty contends that this equity plan entitled him to equity awards as part of his annual compensation.

---

[1] C.A. No. 2018-0376-KSJM Docket ("Dkt.") 1, Verified Complaint ("Compl.").

On January 4, 2017, Batty resigned from GrafTech "for good reason," effective February 15, 2017. GrafTech sent a letter to Batty dated February 8, 2017, acknowledging receipt of the notice of termination. The letter lists five amounts due to Batty under the Agreement.

Batty alleges that he has been underpaid for the amounts he is owed under Sections 2(a)(iv), 2(a)(ii)(A), 2(a)(ii)(B), 2(a)(iii), 2(a)(vi), and 9 of the Agreement. Batty's position concerning the first three amounts is reflected in the following table. The latter three amounts, not reflected in the table, are for health insurance, tax benefits, and attorneys' fees.

| | | **Base Salary** | **Incentive Compensation Plan** | **Long-term Incentive Plan** | **Total** |
|---|---|---|---|---|---|
| **2(a)(iv)** | Due: | 2 * 300,000 = $600,000 | 2 * 195,000 = $390,000 | 2 * 450,000 = $900,000 | $1,890,000 |
| | Paid: | $600,000 | $390,000 | $0 | $990,000 |
| | Owed: | $0 | $0 | $900,000 | $900,000 |
| **2(a)(ii)(A)** | Due: | N/A | $195,000 | $450,000 | $645,000 |
| | Paid: | N/A | $29,250 | $0 | $29,250 |
| | Owed: | N/A | $165,750 | $450,000 | $615,750 |
| **2(a)(ii)(B)** | Due: | N/A | 46/365 * $195,000 = $24,575 | 46/365 * $450,000 = $56,712 | $81,287 |
| | Paid: | N/A | $24,590 | 0 | $24,590 |
| | Owed: | N/A | -$15 | $56,712 | $56,697 |
| | | | | | **$1,572,447** |

Batty filed this action on May 29, 2018. His Verified Complaint asserts seven causes of action. Count IV asserts Batty's claim to additional compensation under

the Agreement. Counts I through III and Count VII assert Batty's claims to additional compensation under alternative legal theories. Counts V and VI seek attorneys' fees and expenses under the Agreement, Defendants' governance documents, and 8 *Del. C.* § 145.

On June 29, 2018, Defendants moved to dismiss all claims asserted in the Verified Complaint. Defendants' motion was fully briefed by November 14, 2018, and argued on January 10, 2019.[2]

## II. LEGAL ANALYSIS

This Court may grant a motion to dismiss under Rule 12(b)(6) for failure to state a claim if a complaint does not allege facts that, if proven, would entitle the plaintiff to relief.[3] "[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'"[4] When considering such a motion, the Court must "accept all well-pleaded factual allegations in the [c]omplaint as true . . . , draw all reasonable inferences in favor of the plaintiff, and deny the motion unless the plaintiff could not recover under any reasonably conceivable set of

---

[2] Dkt. 27, Tr. of Jan. 10, 2019 Oral Arg. on Defs.' Mot. to Dismiss and Pl.'s Mot. for the Interim Reimbursement of Fees, Costs, and Expenses ("Oral Arg. Tr."). Also, on September 17, 2018, while the dismissal motion was being briefed, Batty moved for the interim reimbursement of his attorneys' fees and expenses under Section 9 of the Agreement. Dkt. 9. That motion was fully briefed; the parties presented argument at the hearing on Defendants' motion to dismiss.

[3] Ct. Ch. R. 12(b)(6).

[4] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 537 (Del. 2011).

circumstances susceptible of proof."[5] This reasonable conceivability standard asks whether there is a possibility of recovery.[6] The Court, however, need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[7]

## A. Breach of Contract

Count IV claims that Defendants breached four different subsections of Section 2 of the Agreement by failing to pay Batty certain compensation upon his resignation.

To state a claim for breach of contract, Batty must allege: "1) a contractual obligation; 2) a breach of that obligation by the defendant; and 3) a resulting damage to the plaintiff."[8]

On a motion to dismiss, the Court must determine whether the contract contains "plain and unambiguous" terms "as a matter of law" to determine the absence of a breach.[9] "Contract language is not rendered ambiguous simply because

---

[5] *Id.* at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[6] *Id.* at 537 & n.13.

[7] *Price v. E.I. du Pont de Nemours Co., Inc.*, 26 A.3d 162, 166 (Del. 2011) (citing *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009)).

[8] *Huff Energy Fund, L.P. v. Gershen*, 2016 WL 5462958, at *6 (Del. Ch. Sept. 29, 2016) (internal quotation marks omitted).

[9] *In re Ronald J. Mount 2012 Irrevocable Dynasty Tr. U/A/D/ Dec. 5, 2012*, 2017 WL 4082886, at *3 (Del. Ch. Sept. 7, 2017) (internal quotation marks omitted).

the parties in litigation differ concerning its meaning."[10]  "A contract is ambiguous only when the provisions in controversy are *reasonably* or fairly susceptible of different interpretations or may have two or more different meanings."[11]

### 1. Accrued Incentive Compensation

Section 2(a)(ii) of the Agreement entitles Batty to the amount of his "accrued Incentive Compensation" upon his resignation.[12]  Section 2(a)(ii) specifically requires GrafTech to pay accrued amounts of Batty's "*target variable compensation payment.*"[13]  Batty alleges that the term "target variable compensation" includes equity awards, and that Defendants breached the Agreement by failing to pay him his equity awards that accrued in 2016 and 2017.  Batty values these awards at around $1.5 million.

Defendants argue that "accrued Incentive Compensation" is limited to cash compensation and thus excludes equity awards.  Defendants rely on Section 1(f), which defines "Incentive Compensation" as "any compensation, variable compensation, bonus, benefit or award *paid or payable in cash* under an Incentive Compensation Plan."[14]  According to Defendants, Section 1(f)'s phrase "paid or

---

[10] *Matulich v. Aegis Commc'ns Gp., Inc.*, 942 A.2d 596, 600 (Del. 2008) (internal quotation marks omitted).

[11] *Id*. (internal quotation marks omitted) (emphasis in original).

[12] Compl. Ex. A § 2(a)(ii).

[13] *Id*. § 2(a)(ii)(A) (emphasis added).

[14] *Id*. (emphasis added).

6

payable in cash" modifies all preceding nouns ("compensation, variable compensation, bonus, benefit or award"). In the alternative, Defendants argue that they prevail even if "paid or payable in cash" modifies only the nearest noun, "awards," because equity awards are "awards" and thus subject to the cash limitation.[15] To bolster their interpretation, Defendants point to the definition of "Incentive Compensation Award," which too is limited to "*cash payment or payments* awarded to [Batty] under any Incentive Compensation Plan."[16]

Defendants' interpretation of Section 2(a)(ii) is reasonable, but it is not the only reasonable interpretation. Just as conceivable, the term "Incentive Compensation" could mean certain items that may be paid in cash or equity ("compensation, variable compensation, bonus, benefit") as well as one item that is only paid or payable in cash ("award"). Under this interpretation, regardless of whether the equity awards are "paid or payable in cash," they are included in Batty's accrued Incentive Compensation.

Both parties point to selective SEC filings as supportive of their plain language arguments. For example, Batty cites as supportive UCAR International's 2015 10-K reference to "total target variable compensation" as both "annual and

---

[15] Dkt. 5, Opening Br. in Supp. of Defs.' Mot. to Dismiss ("Defs.' Opening Br.") at 17.

[16] Compl. Ex. A § 1(g) (emphasis added).

long-term performance-based incentive compensation."[17] Defendants cite other aspects of this filing as supportive.[18] While it is true that the Court "may take notice of SEC filings," this is only true "to the extent that the facts put forth in those filings are *not* subject to reasonable dispute."[19] Here, the parties dispute the significance of statements made in the filings, and those statements do not clearly resolve any aspect of the Agreement's ambiguity in any event.[20]

When deciding a motion to dismiss, the Court may not "choose between two differing reasonable interpretations of ambiguous provisions."[21] Rather, "any

---

[17] Dkt. 10, Answering Br. in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Ans. Br.") (citing UCAR Int'l Inc. Annual Report (Form 10-K) at 135 (Mar. 7, 2016) ("UCAR 2015 10-K")).

[18] Defs.' Opening Br. at 10–11 (citing UCAR 2015 10-K at 147–48).

[19] *Fleischman v. Huang*, 2007 WL 2410386, at *3 (Del. Ch. Aug. 22, 2007) (citing *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 171 (Del. 2006) ("The record supports the Court of Chancery's determination that there are no allegations in the Complaint that challenge 'whether the conditions necessary to consummate the transaction were actually met (i.e., a majority vote of holders of each class of GM stock).' Moreover, at the oral argument in the Court of Chancery, the Plaintiffs' counsel stated that they 'have no reason to dispute that [defendants'] disclosures regarding their vote totals are correct.' Under these two circumstances, it was proper for the Court of Chancery to take judicial notice of the publicly available fact, reported by GM in a Form 10-Q filed with the SEC, that a majority of both classes of GM stockholders voted to approve the Hughes transactions.")).

[20] *In re Rural Metro Corp. S'holders Litig.*, 2013 WL 6634009, at *7 (Del. Ch. Dec. 17, 2013) ("the fact that a document may be suitable for judicial notice for certain purposes does not mean that its contents can be used for any conceivable purpose") (citing *In re Santa Fe Pacific Corp. S'holder Litig.*, 669 A.2d 59, 69 (Del. 1995)).

[21] *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 615 (Del. 2003).

8

ambiguity must be resolved in favor of the nonmoving party . . . ."[22] Defendants are "not entitled to dismissal under Rule 12(b)(6) unless the interpretation of the contract on which [its] theory of the case rests is the 'only reasonable construction as a matter of law.'"[23] Because Section 2(a)(ii) is susceptible to multiple reasonable interpretations, Defendants' motion as to Section 2(a)(ii) fails.[24]

### 2. Severance Payment

Section 2(a)(iv) entitles Batty to a "Severance Payment" in the amount of two times the greater of Batty's "target variable compensation payment" in either the year that his employment terminates or the year that the change in control occurs.[25] Defendants argue that the phrase "target variable compensation" as used in Section 2(a)(iv) must be interpreted consistently with Section 2(a)(ii).[26] In light of the Court's ruling as to Section 2(a)(ii), interpreting the provisions consistently at the

---

[22] *Kahn v. Portnoy*, 2008 WL 5197164, at *3 (Del. Ch. Dec. 11, 2008) (quoting *VLIW Tech.*, 840 A.2d at 615 (emphasis original)).

[23] *Id.*

[24] Defendants further argue that Batty did not accrue equity awards under the Equity Incentive Plan in 2016 or 2017, because GrafTech's authority to grant new awards terminated on May 25, 2015. Batty responds that GrafTech's authority to grant new awards is irrelevant because, as alleged in the Verified Complaint, prior authorized awards were still effective through the end of 2017. Pl.'s Ans. Br. at 31; Compl. ¶ 50. The Court accepts Batty's allegation as true for the purpose of this Rule 12(b)(6) motion. *Cent. Mortg.*, 27 A.3d at 535.

[25] Compl. Ex. A § 2(a)(iv).

[26] Defs.' Opening Br. at 9–10.

pleadings stage renders Section 2(a)(iv) ambiguous. Accordingly, Defendants' motion to dismiss Batty's claims under Section 2(a)(iv) is denied.

### 3. Payment of Taxes

Section 2(a)(vi) of the Agreement entitles Batty to "Payment of Taxes."[27] Batty alleges that Defendants are responsible to pay the excise tax due on the additional severance compensation Batty demands in this lawsuit. But Batty does not allege that Defendants have failed to pay taxes on any amounts due to Batty. Nor has Batty alleged any other facts demonstrating that this is a ripe controversy. Accordingly, Batty's claim for breach of Section 2(a)(vi) is dismissed.

### 4. Insurance Benefits

Section 2(a)(iii) of the Agreement entitles Batty to "Insurance Benefits" that are substantially equivalent to those he received from the Defendants prior to the Resignation.[28] Section 2(a)(iii) further provides that "[s]uch benefits shall be provided . . . in lieu of any continuation of coverage [Batty] would be eligible for under COBRA."[29]

Batty contends that GrafTech breached Section 2(a)(iii) by failing to timely arrange for insurance coverage. Before the end of August 2018, GrafTech merely

---

[27] Compl. Ex. A § 2(a)(vi).

[28] *Id*. § 2(a)(iii).

[29] *Id.*

reimbursed Batty for his payments under COBRA. GrafTech has since arranged for coverage effective September 1, 2018, but Batty argues that the benefits provided might not be "substantially equivalent."[30]

Batty has stated a claim that GrafTech breached the Agreement before September 1, 2018, by failing to comply with the requirements of Section 2(a)(iii). What, if any, relief is appropriate for such a claim is not a pleadings-stage determination.

Batty has failed to state a claim that GrafTech breached the Agreement since September 1, 2018. Batty's claim of breach under Section 2(a)(iii) with respect to this time period is dismissed without prejudice.

### 5. Non-Parties to the Contract

Defendants argue that the Court should dismiss Count IV as to certain Defendants. For the purposes of these arguments, the Court takes judicial notice of filings with the Delaware Secretary of State, which are not subject to dispute.[31]

UCAR Carbon changed its name to GrafTech International Holdings Inc. in 2007.[32] Because UCAR Carbon *is* GrafTech, and not a separate or independent

---

[30] Pl.'s Ans. Br. at 37 ("It remains to be seen whether the health benefits GrafTech International selected for Plaintiff (a change of providers) as of September 1, 2018—when COBRA ended on August 31, 2018—are equivalent.").

[31] *In re Baxter Int'l, Inc. S'holders Litig.*, 654 A.2d 1268, 1270 (Del. Ch. 1995).

[32] Dkt. 5, Transmittal Aff. of Eric D. Selden ("Selden Aff.") Ex. 12 (Sec'y of State filing).

entity,[33] the name "UCAR Carbon" is struck from the caption as redundant.[34]

Athena merged with GrafTech in 2015; GrafTech is the surviving corporation.[35] When corporations merge under Delaware law, their separate existences end[36] and the surviving corporation has all the rights and obligations of the former corporations.[37] Having no ongoing separate or distinct legal existence, the constituent corporations to a merger cannot be sued after the merger has closed.[38]

---

[33] *See* 6 William M. Fletcher et al., *Fletcher Cyclopedia of the Law of Private Corporations* § 2456, Westlaw (last up-dated Sept. 2018) ("A mere change in the name of a corporation generally does not destroy the identity of the corporation, nor in any way affect its rights and liabilities. A corporation that changes its name remains the same continuous corporate entity.").

[34] Ct. Ch. R. 12(f) ("[U]pon the Court's own initiative at any time, the Court may order stricken from any pleading . . . any redundant . . . matter.").

[35] Selden Aff. Ex. 13 (Sec'y of State filing).

[36] 2 Edward P. Welch et al., *Folk on the Delaware General Corporation Law* § 259.01 at 9-142–43 (6th ed. 2019) ("In a merger, a constituent corporation that is not the surviving entity continues as part of the surviving entity but no longer exists as a separate and distinct legal entity."); *Beals v. Washington Int'l, Inc.*, 386 A.2d 1156, 1161 (Del. Ch. 1978) ("Since by statute, corporate existence is terminated on the date of merger, a corporation ceases to exist on merger for all purposes, including service of process, unless the legislature provides otherwise."); *Fitzsimmons v. W. Airlines, Inc.*, 290 A.2d 682, 685 (Del. Ch. 1972) ("It is thus a matter of statutory law that a Delaware corporation may not avoid its contractual obligations by merger; those duties 'attach' to the surviving corporation and may be 'enforced against it.' In short, the survivor must assume the obligations of the constituent."); *Argenbright v. Phoenix Fin. Co. of Iowa*, 187 A. 124, 126 (Del. Ch. 1936) ("When a consolidation or merger has taken place under the statute, the old corporations have their identity absorbed into that of the new corporation or the one into which they were merged.").

[37] 8 *Del. C.* § 259(a).

[38] *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Stauffer Chem. Co.*, 1991 WL 138431, at *3 (Del. Super. July 15, 1991) ("[T]he separate corporate existence of Stauffer Basic Chemical Holdings Inc. ceased on August 28, 1987, shortly before this action was filed, when it was merged into Atkemix One Inc. Without legal existence, Stauffer Basic

Athena should therefore be removed as a defendant.

UCAR International assigned the Agreement to GrafTech as part of a corporate reorganization in late 2010, as the Verified Complaint acknowledges.[39] Defendants submit evidence reflecting that Batty consented to this assignment,[40] but such evidence is not appropriately considered by the Court on a Rule 12(b)(6) motion. Accordingly, Defendants' motion as to UCAR International is denied.

BCP IV is GrafTech's corporate parent. BCP IV is not alleged to have signed the Agreement on which Batty's claims are predicated, but BCP IV is a successor for purposes of the Agreement, and expressly assumed GrafTech's obligations under the Agreement, according to Batty.[41] Defendants' motion as to BCP IV is denied.

## B. Non-Contractual Claims for Compensation

### 1. Count I: Specific Performance and Mandatory Injunction

Count I seeks specific performance and a mandatory injunction for breach of contract. In substance, Count I seeks an order requiring Defendants to remedy the contractual breaches identified in Count IV. The claims for contractual breach not

---

Chemical Holdings Inc. lacks capacity to sue or be sued."). *See also Damon Alarm Corp. v. Am. Dist. Tel. Co.*, 304 F. Supp. 83, 84 (S.D.N.Y. 1969) ("Delaware law provides that when a merger becomes effective the separate existence of all corporations except the survivor shall cease to exist. Consequently, the moving defendant no longer exists and the action cannot be maintained against it." (internal citations omitted)).

[39] Compl. ¶ 8.

[40] Selden Aff. Ex. 11 (Nov. 15, 2010, letter reflecting Batty's consent to assignment).

[41] Pl.'s Ans. Br. Ex. E at 1.

dismissed by this decision, however, seek money damages only. Batty's request for specific performance and injunctive relief thus fails because Batty has an adequate remedy at law.[42] Count I is dismissed.

### 2. Count II: Unjust Enrichment

Count II claims that Defendants have been unjustly enriched by Batty's "over thirty-four (34) years of dedicated and loyal service . . . to the Defendants."[43] Batty contends "[i]t would be unjust to allow Defendants to retain such benefits without recognizing the terms of the Agreement . . . ."[44] At oral argument, counsel for Batty suggested that the unjust enrichment claim was necessary in the event that the Court determined the Agreement does not provide Batty with all the rights he believes it was intended to provide.[45]

---

[42] *Messick v. Diamond State Truck Bros., Inc.*, 1980 WL 81865, at *1 (Del. Ch. Mar. 12, 1980) ("an accounting for interference with contract rights which actually seeks nothing more than money damages, and which does not allege that the compilation of damages is in any way complicated, sets forth a claim for which there is an adequate remedy at law and thus one not within the jurisdiction of this Court"). *See also Godwin v. Collins*, 1869 WL 1008, at *13 (Del. Super. June 1869) ("Courts of Equity have never treated specific performance as a merely alternative relief to that of damages at law, such as might be resorted to at a plaintiff's bare election; but they have always administered it only as a supplementary remedy, in order to effect more complete justice in cases where damages afford an inadequate redress.").

[43] Compl. ¶ 95.

[44] *Id.* ¶ 96.

[45] Oral Arg. Tr. at 73:13–22.

14

The Verified Complaint must allege the five elements of unjust enrichment to survive the motion to dismiss: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law."[46] A necessary consequence of the fifth factor—absence of a legal remedy—is that this Court dismisses unjust enrichment claims where the parties' relationship is comprehensively governed by a contract.[47] There are exceptions to the rule;[48] however, "a right to plead alternative theories does not obviate the obligation to provide factual support for each theory."[49]

---

[46] *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).

[47] *Lyons Ins. Agency, Inc. v. Kirtley*, 2019 WL 1244605, at *2 (Del. Super. Ct. Mar. 18, 2019) ("If the relationship between the parties is comprehensively governed by contract, the contract alone must provide the measure of the plaintiff's rights, and a claim for unjust enrichment will be denied."); *Nemec v. Shrader*, 2009 WL 1204346, at *6 (Del. Ch. Apr. 30, 2009), *aff'd on other grounds*, 991 A.2d 1120 ("Delaware courts . . . have consistently refused to permit a claim for unjust enrichment when the alleged wrong arises from a relationship governed by contract.") (citing *Res. Ventures, Inc. v. Res. Mgmt. Int'l, Inc.*, 42 F. Supp. 2d 423, 440 (D. Del. 1999) and *ID Biomedical Corp. v. TM Techs.*, 1995 WL 130743, at * 15 (Del. Ch. Mar. 16, 1995) ("A party cannot seek recovery under an unjust enrichment theory if a contract is the measure of the plaintiff's rights.")).

[48] *BAE Sys. Info. & Elec. Sys. Integration, Inc. v. Lockheed Martin Corp.*, 2009 WL 264088, at *8 (Del. Ch. Feb. 3, 2009) ("In some instances, both a breach of contract and an unjust enrichment claim may survive a motion to dismiss when pled as alternative theories for recovery.").

[49] *Id.* ("[Breach of contract and unjust enrichment theories] are factually distinguishable . . . and, more importantly, do not stand for the proposition that an unjust enrichment claim must survive a motion to dismiss when pled alternatively with a contract claim that will move beyond the motion to dismiss stage.").

In this case, Batty provides no independent support for his unjust enrichment claim. He merely contends that it would be unjust for Defendants, having received the benefit of his loyal employment, to fail to deliver him his *contractual* expectation under the Agreement. Unjust enrichment is "the unjust retention of a benefit" in contravention of "the fundamental principles of justice or equity . . . ."[50] Here, no recourse to fundamental principles is necessary. The fulcrum of Batty's request for relief is the Agreement, and it is on the terms of the Agreement that the Verified Complaint will pivot Batty to success or not. Count II is dismissed.

### 3. Count III: Promissory Estoppel

Count III claims promissory estoppel. Batty articulates the basis for this claim as follows: "Defendants repeatedly made assurances in SEC filings and e-mails to [Batty] that Defendants would honor the Agreement and all benefit and compensation plans."[51] Put differently, Batty claims that Defendants promised to honor their contractual commitments. Promissory estoppel is designed to enforce a contract where some contract formation problem would otherwise prevent enforcement.[52] Here, the parties do not dispute that the Agreement is binding and

---

[50] *Nemec*, 991 A.2d 1120, 1130 (quoting *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988)).

[51] Compl. ¶ 99.

[52] Defs.' Opening Br. at 35 (citing *J.C. Trading Ltd. v. Wal-Mart Stores, Inc.*, 947 F. Supp. 2d 449, 457 (D. Del. 2013)).

enforceable. Rather, they dispute how its terms are to be interpreted. Under these circumstances, dismissal of the promissory estoppel claim is appropriate.[53]

### 4. Count VII: Ohio Prompt Payment Act

Count VII seeks liquidated damages under Section 4113.15 of the Ohio Prompt Payment Act. A court cannot award liquidated damages under the Ohio Prompt Payment Act where the employer has a basis for disputing the allegedly unpaid compensation.[54] Because Defendants dispute that Batty is owed any of the

---

[53] *SIGA Techs., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 348 (Del. 2013) ("Promissory estoppel does not apply . . . where a fully integrated, enforceable contract governs the promise at issue."); *Standard Gen. L.P. v. Charney*, 2017 WL 6498063, at *15 n.118 (Del. Ch. Dec. 19, 2017) (citing *SIGA Techs.*, 67 A.3d at 348), *judgment entered*, (Del. Ch. 2018), *and aff'd*, 195 A.3d 16 (Del. 2018). *See also Sun Life Assurance Co. of Canada v. Wilm. Tr., Nat'l Ass'n*, 2018 WL 3805740, at *3 (Del. Super. Aug. 9, 2018) ("Logically, if the contract is found to be valid, estoppel would no longer be an available claim." (citing *SIGA Techs.*, 67 A.3d at 348)); *Alltrista Plastics, LLC v. Rockline Indus., Inc.*, 2013 WL 5210255, at *9 (Del. Super. Sept. 4, 2013) ("[I]f there is an enforceable contract, promissory estoppel will apply only if the contract governs other aspects of the parties' relationship and not when the relied-upon promises were incorporated into the contract."). Batty cites *Ramone v. Lang*, 2006 WL 905347 (Del. Ch. Apr. 3, 2006), for the assertion that "contractual claims and promissory estoppel claims [may] persist[] simultaneously pending discovery and ultimately trial . . . ." Pl.'s Ans. Br. at 47. In *Ramone*, however, the parties disputed whether negotiations had led to a binding and enforceable contract. 2006 WL 905347, at *1. In this case, the parties do not dispute the enforceability of the Agreement.

[54] Ohio Rev. Code §§ 4113.15(B) (section applies where "wages remain unpaid for thirty days beyond the regularly scheduled payday . . . and no contest[,] court order or dispute of any wage claim including the assertion of a counterclaim exists accounting for nonpayment . . . ."); *Jones v. Select Indus. Corp.*, 2006 WL 1705201, at *6 (S.D. Ohio June 16, 2006) ("where the employer disputes the wage claim, no liquidated damages are due"); *Fridrich v. Seuffert Constr. Co.*, 2006 WL 562156, at *4 (Ohio Ct. App. Mar. 9, 2006) ("Since an actual dispute existed as to [the plaintiff's] unused vacation pay, we find [the defendant] is not liable for liquidated damages."); *Sutka v. Yazaki N. Am. Inc.*, 256 F. Supp. 3d 677, 683 (E.D. Mich. 2017) (granting motion to dismiss against 4113.15 claim, where court found relief was "not available under § 4113.15(B) when the underlying

17

unpaid wages he seeks, Batty is not entitled to liquidated damages under Section 4113.15 of the Ohio Prompt Payment Act. Count VII's request for liquidated damages is dismissed.

In briefing Count VII, the parties focused on Batty's claim for liquidated damages under the Ohio Prompt Payment Act. If Batty purports to seek relief other than liquidated damages through Count VII, within ten business days of the issuance of this opinion, Batty shall submit a supplemental answering brief setting forth the basis for any such request in 4,000 words or fewer. Defendants shall be entitled to submit a supplemental reply brief of not more than 4,000 words within ten business days thereafter. If Batty fails to submit briefing by this deadline, Count VII shall be deemed dismissed in its entirety.

### C. Attorneys' Fees

#### 1. Count V: Indemnification under the Agreement

Count V seeks attorneys' fees and expenses under Section 9 of the Agreement, which provides:

> Fees and Expenses. The Company shall pay all legal fees and related expenses incurred [1] by you as a result of your termination following a Change in Control of the Corporation or [2] by you in seeking to obtain or enforce any right or benefit provided by this Agreement (including

---

unpaid wage claim is disputed by the employer." The court distinguished cases refusing to dismiss such claims by differentiating situations where a § 4113.15 claim was litigated to enforce a clear right to wages from situations where the employer had genuinely disputed the plaintiff's entitlement to the wages sought).

all fees and expenses, if any, incurred in contesting or disputing any such termination or incurred by you in seeking advice in connection therewith).[55]

This language entitles Batty to legal fees and related expenses in two circumstances: *first*, "as a result of [Batty's] termination following a change in Control of the Corporation," or *second*, "in seeking to obtain or enforce any right or benefit provided by this Agreement."[56] Batty contends that both sets of circumstances are present here, but he has failed to adequately plead the circumstances under either.

*First*, Batty's claim for fees "as a result of [his] termination following a change in Control of the Corporation" fails because Batty has not pled that he incurred fees and expenses *as a result* of those events. Under the language of Section 9, it is not sufficient that Batty was terminated. Nor is it sufficient that a change in control occurred. Rather, Batty must plead a causal connection between the termination event and the attorneys' fees. Batty's sole allegation in support of this causal factor states: "[Batty] has incurred significant legal fees and expenses as a result of his termination (resignation) . . . ."[57] This conclusory language does not

---

[55] Compl. Ex. A § 9.

[56] *Id.*

[57] Compl. ¶ 117.

19

support the inference of a causal connection.[58] There are also no well-pleaded facts from which the Court could reasonably infer the necessary causal connection. To the contrary, the Verified Complaint alleges that Batty resigned for good reason, and Defendants never challenged his resignation. The only reasonable inference that can be made from the allegations is that the termination did not give rise to legal fees and expenses.

*Second*, at this stage, Batty is not entitled to costs and attorneys' fees "in seeking to obtain or enforce any right or benefit provided by" the Agreement. Indemnification and advancement are distinct legal rights.[59] Both rights entitle a covered person to costs and attorneys' fees, but they accrue at different times. Indemnification rights accrue "*upon the conclusion* of a matter or upon resolution of one or more claims."[60] Advancement is the right to payment of costs and fees incurred in connection with certain claims before those claims are resolved.

---

[58] *In re Gen. Motors (Hughes)*, 897 A.2d at 168 ("A trial court is not . . . required to accept as true conclusory allegations without specific supporting factual allegations.") (quotation marks omitted).

[59] *See Emerging Europe Growth Fund, L.P. v. Figlus*, 2013 WL 1250836, at *4 (Del. Ch. Mar. 28, 2018) ("[A]dvancement and indemnification, although related, are 'distinct types of legal rights.'") (quoting *Senior Tour Players 2017 Mgmt. Co. v. Golftown 207 Hldg. Co.*, 853 A.2d 124, 128 (Del. Ch. 2004)).

[60] William D. Johnston et al., *Indemnification and Insurance for Directors and Officers*, 54-3rd Corporate Practice Portfolio Series § III.A.1 at A-17 (BNA 2014) [hereinafter "Johnston, *Indemnification*"] (emphasis added).

20

Advancement rights accrue "*prior to the end* of the matter or resolution of certain claims."[61] Batty seeks advancement, not indemnification.

Section 9 creates a right to indemnification, not advancement. To create a right to payment of costs and attorneys' fees in advance of final determination of the underlying claims, contracting parties use variants of the word "advance" or phrases such as "as incurred."[62] Section 9 does not contain any of these phrases, or any comparable language indicating an intent to pay Batty fees in advance of the final disposition of the underlying claims. Batty argues that the phrase "in seeking" in Section 9 creates a right to advancement. Much like similar phrases commonly found in indemnification provisions—such as "in defending" or "in connection with"[63]—the phrase "in seeking" refers to the category of covered expenses (*i.e.*, expenses incurred "in seeking"), not the time at which the right to obtain payment for such expenses accrues.

---

[61] *Id.* (emphasis added).

[62] *See, e.g.*, *Martinez v. Regions Fin. Corp.*, 2009 WL 2413858, at *13 (Del. Ch. Aug. 6, 2009) (recognizing a right to advancement where the governing provision required the company "to pay *as incurred* . . . all legal fees and expenses") (emphasis added); *O'Brien v. IAC/Interactive Corp.*, 2009 WL 2490845, at *10 (Del. Ch. Aug. 14, 2009) (enforcing a right to advancement where the provision at issue required the company to "*advance all Costs* to any Indemnitee incurred . . . ." (emphasis added)).

[63] *See, e.g.*, Johnston, *Indemnification*, Sample Board Advancement and Indemnification Provisions B-401 & B-501.

Under Delaware law, "[i]ndemnification claims . . . do not accrue until the underlying claim is finally decided."[64] Batty's rights under Section 9, therefore, do not accrue until an underlying claim is finally decided. Accordingly, Count V is dismissed without prejudice.

2. **Count VI: Indemnification Under 8 *Del. C.* § 145 and GrafTech's Corporate Documents**

Count VI seeks indemnification under GrafTech's bylaws, charter, and Section 145 of the Delaware General Corporation Law. Like Batty's contractual claim for fees and expenses, Count VI fails to state a claim.

Section 145 of the Delaware General Corporation Law limits the extent to which GrafTech may provide advancement and indemnification in its corporate documents. Sections 145(a) and 145(b) permit corporations to indemnify former officers for claims brought "by reason of the fact" that they served as officers.[65] The indemnification provisions in both GrafTech's certificate of incorporation and

---

[64] *LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 198 (Del. 2009). Further, "[i]n a contract such as the [merger agreement here], in which one party agrees to indemnify the other for damages, including attorneys' fees, arising from that party's breach of the contract, the term 'indemnity' has a distinct legal meaning that permits the party seeking indemnification to bring a separate cause of action for indemnification after first bringing a successful action for breach of the contract." *Id.* at 197–98.

[65] 8 *Del. C.* § 145(a)–(b).

22

bylaws reference Section 145 and contain the "by reason of the fact" requirement, as they must.[66]

Delaware courts have interpreted "by reason of the fact" to require "a nexus or causal connection between [a claim] and one's official corporate capacity."[67] The "by reason of the fact" standard is not met where the claims at issue concern "a specific and personal contractual obligation that does not involve the exercise of judgment, discretion, or decision-making authority on behalf of the corporation."[68]

The claims in this case concern specific and limited contractual obligations—those set forth in the Agreement. This litigation does not challenge Batty's exercise of judgment, discretion, or decision-making authority on behalf of the corporation. Accordingly, the claims are not "by reason of the fact" that Batty served in a covered capacity.

---

[66] Selden Aff. Ex. 14 (Amended and Restated Certificate of Incorporation of Graftech International Ltd.) Art. VII § 2; Selden Aff. Ex. 15 (Bylaws of GrafTech International Ltd.) Art. XIII §§ 1, 3.

[67] *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 213–14 (Del. 2005).

[68] *Paolino v. Mac Sec. Int'l, Inc.*, 985 A.2d 392, 403 (Del. Ch. 2009). *See also Cochran v. Stifel Fin. Corp.*, 809 A.2d 555, 562 (Del. 2002) ("When a corporate officer signs an employment contract committing to fill an office, he is acting in a personal capacity in an adversarial, arm[']s-length transaction. To the extent that he binds himself to certain obligations under that contract, he owes a personal obligation to the corporation. When the corporation brings a claim and proves its entitlement to relief because the officer has breached his individual obligations, it is problematic to conclude that the suit has been rendered an 'official capacity' suit subject to indemnification under § 145 and implementing bylaws. Such a conclusion would render the officer's duty to perform his side of the contract in many respects illusory."), *aff'g in part, rev'g in part on other grounds*, 2000 WL 184767, at *6 (Del. Ch. Dec. 13, 2000).

## III.    CONCLUSION

Defendants' Motion to Dismiss the Verified Complaint as to Count IV is GRANTED IN PART and DENIED IN PART, as discussed above.  As to Counts I through III and V through VI, the motion is GRANTED.  As to Count VII, the motion is GRANTED IN PART and subject to further briefing in part, as discussed above.  Defendants UCAR Carbon and Athena are struck from the caption.